UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DANA SCOTT KRULEE,

        Plaintiff,

    v.

RECEIVABLES PERFORMANCE
MANAGEMENT, LLC, et al.,

        Defendants.

Case No.  5:14-cv-02860-RMW

**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DISMISSING CASE**

Re: Dkt. No. 51

Receivables Performance Management, LLC ("RPM") and Jefferson Capital Systems, LLC ("Jefferson Capital") (collectively "defendants") filed a motion pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* ("FAA"), to compel arbitration.  Dkt. No. 50; Dkt. No. 56-1.  Plaintiff opposes on the basis that defendants have not shown that than an agreement to arbitrate exists between the parties.  Dkt. No. 62.  For the reasons explained below, the court GRANTS the motion to compel arbitration and dismisses the case.

**I.  BACKGROUND**

    **A.  Factual Background**

Krulee brought this purported class action asserting claims against defendants under the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA").  *See* Dkt. No. 1 ("Compl.").  Krulee's claims arise out of defendants' communications attempting to collect

Krulee's delinquent credit card account that originated with First National Bank of Omaha ("FNBO"). *Id.*[1]

In 2005, Krulee opened a credit card account with Fleet Bank.  In July 2005, the Fleet Bank credit card account was transferred to FNBO and became the "Emerge Card."  It appears that the account was not in default when it was transferred from Fleet Bank to FNBO.  When the credit card account was transferred to FNBO, Krulee was sent a "Welcome Letter" and was provided with the new "Terms and Conditions" that governed the Emerge Card.  *See* Dkt. No. 51-1 ("Ryan Decl.") at ¶ 5.  The "Welcome Letter" stated:

> Welcome to Emerge®! Recently, your Fleet Bank (RI), National Bank ("Fleet"), MasterCard® or Visa® account was acquired by First National Bank of Omaha ("FNBO") and effective June 6, 2005 will be replaced with a NEW FNBO Emerge MasterCard or Visa account, as appropriate.
>
> . . .
>
> **New account terms will apply.** The terms and conditions governing your new FNBO Emerge account are set forth in the enclosed Important Notice and the Summary of Terms on the back of this card carrier, both of which are incorporated here by reference. These new terms and conditions differ from the terms and conditions governing your old Fleet credit card account and will become effective as to transferred balances and new transactions on July 1, 2005, unless you decline these terms as provided below. Your new FNBO Emerge terms reflect a different governing law provision, different arbitration provisions, new foreign transaction procedures as the result of recent changes in card association rules, and a new Foreign Transaction Fee Finance Charge. . . .
>
> **Your right to decline new account terms.** The new terms reflected in the enclosed Important Notice and on your Summary of Terms will become effective as to existing balances and new transactions on July 1, 2005, unless you decline these terms. You must decline our offer by June 30,2005 by calling 1-866-646-7027. . . .

Dkt. No. 51-1, Ryan Decl. Ex. A, Welcome Letter (bold in original).

The Emerge Terms and Conditions included the following arbitration provision:

---

[1] The complaint identifies First North American National Bank as the issuer of the Emerge Card, but it appears that FNBO is correct issuer.

ARBITRATION PROVISION (AGREEMENT TO ARBITRATE CLAIMS)

Any claim, dispute or controversy (whether in contract, tort, or otherwise) at any time arising from or relating to your Account, any transferred balance or this Agreement (collectively, "Claims"), upon the election of you or us, will be resolved by binding arbitration pursuant to this Arbitration Provision and the Code of Procedure ("NAF Rules") of the National Arbitration Forum ("NAF") in effect when the Claim is filed. . . .

Dkt. No. 51-1, Ryan Decl. Ex. B, Terms and Conditions.

Krulee did not decline the account terms, and used the Emerge Card from about August 2005 to November 2010. Eventually, Krulee ran up a debt and defaulted on the Emerge Card.

Plaintiff's Emerge Card account was charged off and transferred from FNBO to CompuCredit. CompuCredit is now known as "Atlanticus Services Corporation" ("Atlanticus"). The court will refer to both Atlanticus and CompuCredit as "CompuCredit."

The "Account Ownership Agreement" transferring plaintiff's account from FNBO to CompuCredit provided that "all right, title and interest" in the charged off accounts were transferred to CompuCredit. *See* Dkt. No. 68-1 ("Maslia Decl.") at ¶ 2.

Beginning in March 2006, CompuCredit and Jefferson Capital entered into a series of transactions, and Jefferson Capital eventually purchased plaintiff's debt. Dkt. No. 51-1, ("Weinreis Decl.") at ¶ 4. The first "Account Purchase Agreement" was entered into on March 9, 2006, and provided that CompuCredit (and other sellers not relevant here), "for value received, without recourse, assigns, sells and delivers to Jefferson Capital Systems, LLC (the 'Buyer'), all rights, title and interest in and to (i) the Accounts . . ." Dkt. No. 50-5, Weinreis Decl. Ex. A. at ECF pg. 6. Later Amendments to the Account Purchase Agreement, specifically, the Sixth Amendment, caused Krulee's Emerge Card account to be transferred from CompuCredit to Jefferson Capital. *See* Weinreis Decl. ¶ 4.

Having acquired plaintiff's charged off credit card account, Jefferson and RPM attempted to collect on it. In an attempt to collect the debt, Jefferson Capital, via RPM, sent an initial collection notice to Krulee. The notice allegedly falsely states that the "Original Creditor" was

United States District Court
Northern District of California

"Jefferson Capital."  Plaintiff alleges that defendants' initial collection notice, which falsely stated that the "Original Creditor" was "Jefferson Capital," violates 15 U.S.C. §§ 1692e and 1692e(10).

**B. Procedural Background**

Krulee filed his purported class action complaint on June 20, 2014.  Dkt. No. 1.  Jefferson Capital and RPM both answered.  Dkt. Nos. 14, 16.  Plaintiff then filed a motion to strike affirmative defenses from the answers, which the court granted in part and denied in part.  Dkt. Nos. 20, 21 (Motions to strike); Dkt. No. 29 (Order).  Jefferson Capital and RPM then filed a joint amended answer.  Dkt. No. 33.  Following a case management conference, the court ordered defendants to "provide to the plaintiff the class size or file a declaration explaining why they are unable to provide the class size," and otherwise stayed discovery pending a forthcoming motion to compel arbitration.  Dkt. No. 49.  Defendants then filed the instant motion to compel arbitration.  Dkt. No. 51.

In connection with the motion to compel arbitration, defendants filed certain documents under seal.  Defendants filed the Account Purchase Agreement and its various Amendments between CompuCredit and Jefferson under seal, and did not file the Account Ownership Agreement between FNBO and CompuCredit with the motion to compel.  Plaintiff opposed the motion to file the Account Purchase Agreement between CompuCredit and Jefferson under seal, arguing that defendants had not shown good cause for sealing and that plaintiff was prejudiced by not being able to review the document.  Dkt. No. 53.  Plaintiff also opposed the motion to compel arbitration on the merits, arguing that defendants had not shown that the transfer from FNBO to CompuCredit actually transferred the right to arbitrate.

After reviewing plaintiff's arguments, the court ordered defendants to file the agreement transferring Krulee's account from FNBO to CompuCredit.  Dkt. No. 67 (Order).  Defendants did so, and filed the Agreement under seal.  Dkt. No. 68.  Plaintiff opposed filing the Agreement under seal.  Dkt. No. 69.  After reviewing both motions to seal, the court denied both without prejudice.  Dkt. No. 70.  The court ordered the parties to enter into a protective order "allowing

1    plaintiff (or plaintiff's counsel) access to the unredacted Agreements for purposes of this litigation

2    only." *Id.*  The court ordered the parties to enter into a protective order because defendants had

3    previously offered to provide plaintiff's counsel with unredacted copies of the agreements if

4    plaintiff agreed to a protective order, but plaintiff did not respond to this offer.  The court then

5    gave each party the opportunity to comment on the contents of the two Agreements.  Plaintiff filed

6    a statement indicating that "[a]fter Plaintiff's counsel's review of the documents produced by

7    Defendants, Plaintiff will offer no further briefing, and submits the matter to the Court on the

8    papers filed herein and statements of counsel at the May 22, 2015, hearing."  Dkt. No. 78 at 2.

9    The court now evaluates the motion to compel arbitration on the merits.

10   **II. LEGAL STANDARD**

11       The Federal Arbitration Act ("FAA") provides that written arbitration agreements "shall be

12   valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

13   revocation of any contract."  9 U.S.C. § 2.  "Under § 4 of the FAA, a district court must issue an

14   order compelling arbitration if the following two-pronged test is satisfied: (1) a valid agreement to

15   arbitrate exists; and (2) that agreement encompasses the dispute at issue."  *United Computer*

16   *Systems, Inc. v. AT&T Corp.*, 298 F.3d 756, 766 (9th Cir. 2002).  "The standard for demonstrating

17   arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration

18   motion, since the [FAA] is phrased in mandatory terms."  *Republic of Nicar. v. Std. Fruit Co.*, 937

19   F.2d 469, 475 (9th Cir. 1991).  The "'principal purpose' of the FAA is to 'ensur[e] that private

20   arbitration agreements are enforced according to their terms.'"  *AT&T Mobility LLC v.*

21   *Concepcion*, 131 S. Ct. 1740, 1748 (2011) (citations omitted).  The FAA's broad sweep reflects

22   both the "liberal federal policy favoring arbitration, and the fundamental principle that arbitration

23   is a matter of contract."  *AT&T Mobility LLC*, 131 S. Ct. at 1745 (internal quotation marks and

24   citations omitted).

25       The FAA creates a body of federal substantive law of arbitrability that requires a healthy

26   regard for the federal policy favoring arbitration and preempts state law to the contrary.  *Volt Info.*

27
28

United States District Court
Northern District of California

*Scis., Inc. v. Bd. of Trs. Of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–79 (1989); *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936–37 (9th Cir. 2001).  State law is not entirely displaced from the federal arbitration analysis, however.  *See Ticknor*, 265 F.3d at 936–37.  When deciding whether the parties agreed to arbitrate a certain matter, courts generally apply ordinary state law principles of contract interpretation.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  Thus, in determining whether parties have agreed to arbitrate a dispute, the court applies "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration."  *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009).

"[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability."  *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985).  If a contract contains an arbitration clause, there is a presumption of arbitrability, *AT&T*, 475 U.S. at 650, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).  The party resisting arbitration bears the burden of showing the arbitration agreement is invalid or does not encompass the claims at issue.  *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

**III. ANALYSIS**

Defendants move to compel binding arbitration and to stay the case pending arbitration, or for the court to dismiss the case.  Dkt. No. 56-1.  Krulee opposes, arguing that defendants cannot enforce the arbitration clause in the Emerge Card Terms and Conditions. All of Krulee's arguments are directed to the first prong of the two-part test on a motion to compel arbitration, and Krulee does not contest that the claims at issue here are within the scope of the arbitration clause. Accordingly, the court finds that the substantive issues which arise from Krulee's complaint are within the scope of the arbitration agreement, and the court's analysis is limited to the questions of whether an arbitration clause exists and whether defendants may enforce it.

United States District Court
Northern District of California

1    Krulee does not dispute that he opened the account at issue in this case, *see* Dkt. No. 1, at

2  ¶ 10, or that he used the credit card and thereby accepted the terms and conditions of a cardholder

3  agreement.  However, Krulee argues that defendants have not shown that they possess the right to

4  arbitrate.  Krulee's argument is essentially an evidentiary challenge to defendant's evidence and

5  declarations authenticating the Terms and Conditions and the contracts transferring Krulee's

6  account.  Krulee also argues that equity precludes enforcement of the arbitration agreement. The

7  court first addresses the sufficiency of defendant's evidence showing that Jefferson Capital has the

8  right to compel arbitration and then addresses plaintiff's equity argument.

9    **A.  The Sufficiency of Defendants' Evidence**

10    Before an item of evidence may be considered, Federal Rule of Evidence 901(a) requires a

11  proper foundation be laid to authenticate the item by "evidence sufficient to support a finding that

12  the item is what the proponent claims it is."  *See Canada v. Blain's Helicopters, Inc.*, 831 F.2d

13  920, 925 (9th Cir. 1987).  Such a foundation may be laid by testimony of a witness who has

14  personal knowledge. Fed. R. Evid. 901(b)(1).

15    **1.  The Emerge Card Terms and Conditions**

16    Krulee argues that defendants have not shown that the Emerge Card Terms and Conditions

17  apply to Krulee's account.  Krulee argues that neither the "Welcome Letter" nor the "Terms and

18  Conditions" are "signed or addressed, or has any indicia of a connection to Plaintiff, or any

19  account of Plaintiff's." Dkt. No. 62 at 4-5.

20    The court finds that the Ryan Declaration is sufficient to authenticate the Emerge Card

21  Terms and Condition.  Mr. Ryan is "an executive correspondence manager for Atlanticus Services

22  Corporation ('Atlanticus') formerly known as CompuCredit Corporation."  Ryan Decl. ¶ 1.  Mr.

23  Ryan attests, based on his "personal knowledge of Atlanticus' operations, as well as records

24  available to me as they are kept in the ordinary course of its business, and information obtained

25  from other employees upon whom I regularly rely in the ordinary course of business" that FNBO

26  received Krulee's account from Fleet, that the account was serviced by CompuCredit, and that

27  
28

CompuCredit, on behalf of FNBO, mailed the Welcome Letter and Terms and Conditions to all Emerge Card holders, including Krulee. *Id.* ¶¶ 1-6. Mr. Ryan also avers that the documents attached to his declaration are true and correct copies of the Welcome Letter and Terms and Conditions. *Id.*

Mr. Ryan is qualified to testify about CompuCredit's business practices and procedures for receiving information from third parties in connection with the sale of assets such as the account at issue. Mr. Ryan is also qualified to attest that the card member agreement is the document that CompuCredit sent to FNBO credit card users. Additionally, plaintiff admits that he had an Emerge Card issued by FNBO and submits no evidence suggesting that the Ryan declaration is suspect. The court therefore concludes that the card member agreement is sufficiently authenticated by the Ryan declaration pursuant to Rule 901, and is admissible.

Accordingly, as the Emerge Card Terms and Conditions include the arbitration clause,[2] the court finds that plaintiff entered into an agreement to arbitrate the claims at issue in this case.

### 2. The Transfer From FNBO to CompuCredit

Defendants submit the declaration of David Maslia to authenticate the transfer of plaintiff's account from FNBO to CompuCredit. Dkt. No. 68-1. Mr. Maslia is "an Assistant General Counsel of non-party Atlanticus Services Corporation ('Atlanticus'), which was formerly known as CompuCredit Corporation." *Id.* ¶ 1. Mr. Maslia "confirmed that [Krulee's] account was charged off and therefore transferred to CompuCredit pursuant to Section 2.08" of the transfer Agreement. *Id.* ¶ 2. Mr. Maslia also confirms that the "Account Ownership Agreement dated November 17, 2004 between First National Bank of Omaha ('FNBO'), CompuCredit and Transistor, LLC ('Agreement') . . . provides that 'all right, title and interest'" in Krulee's account

---

[2] "ARBITRATION PROVISION (AGREEMENT TO ARBITRATE CLAIMS) Any claim, dispute or controversy (whether in contract, tort, or otherwise) at any time arising from or relating to your Account, any transferred balance or this Agreement (collectively, "Claims"), upon the election of you or us, will be resolved by binding arbitration pursuant to this Arbitration Provision and the Code of Procedure ("NAF Rules") of the National Arbitration Forum ("NAF") in effect when the Claim is filed. . . ." Dkt. No. 51-1, Ryan Decl. Ex. B, Terms and Conditions.

United States District Court
Northern District of California

1    was transferred to CompuCredit.  *Id.*  Plaintiff offers no evidence to challenge the credibility of the

2    declaration.  Mr. Maslia is qualified to attest that agreement between CompuCredit and FNBO

3    covered Krulee's account and to authenticate the agreement itself.  Accordingly, the court

4    concludes that the transfer agreement between CompuCredit and FNBO is sufficiently

5    authenticated by the Masila declaration pursuant to Rule 901, and is admissible.

6          The court finds that CompuCredit was transferred the right to arbitrate because the

7    Agreement transfers "all right, title and interest" in the charged off accounts were transferred to

8    CompuCredit.  *See* Maslia Decl. at ¶ 2.

9          **3.  The Transfer from CompuCredit to Jefferson**

10         Defendants rely on the declaration of Ms. Weinreis, which specifically states that Krulee's

11   account was subject to the transfers memorialized in the assignments attached to the Weinreis

12   declaration.  Ms. Weinreis is a "Senior Bankruptcy Business Analyst and an authorized

13   representative for Jefferson Capital."  Dkt. No. 51-1 ¶ 1.  Ms. Weinreis was "responsible for and

14   [has] familiarity with, among other things, maintaining and overseeing debt collection records,

15   account purchase and transfer information, and other account information pertinent to accounts

16   and debts that Jefferson Capital obtains from third parties, including agreements with Atlanticus

17   Services Corporation ('Atlanticus'), which was formerly known as CompuCredit Corporation." *Id.*

18   ¶ 3.  Ms. Weinreis is qualified to attest that agreements between CompuCredit and Jefferson

19   covered Krulee's account and to authenticate the agreements themselves.  Accordingly, the court

20   concludes that the transfer agreements between CompuCredit and Jefferson Capital are

21   sufficiently authenticated by the Weinreis declaration pursuant to Rule 901, and are admissible.

22         The transfer agreement confirms that Jefferson was transferred the right to arbitrate, as the

23   agreement cofnrims that CompuCredit, "for value received, without recourse, assigns, sells and

24   delivers to Jefferson Capital Systems, LLC (the 'Buyer'), all rights, title and interest in and to (i)

25   the Accounts . . ."  Weinreis Decl. Ex. A. at ECF pg. 6.

26         In sum, the defendants have submitted declarations sufficient to authenticate the Terms and

United States District Court
Northern District of California

1   Conditions and the transfer agreements from FNBO to CompuCredit and from CompuCredit to

2   Jefferson.  The Terms and Conditions confirm that plaintiff entered into an arbitration agreement

3   covering the claims at issue.  The transfer agreements confirm that defendants have the right to

4   enforce the arbitration agreement.  Therefore, defendants have satisfied both prongs of the *United*

5   *Computer Systems, Inc. v. AT&T Corp.* test, and the court must grant the motion to compel

6   arbitration.  298 F.3d at 766.

7   **B.  Equity does not preclude enforcement of the arbitration agreement**

8   Krulee's final argument is that equity prevents the arbitration agreement from being

9   enforced against him.  Dkt. No. 62 at 10-11.  Krulee points out several perceived disadvantages

10  she will face in arbitration and asserts that arbitration clauses enable parties to circumvent

11  consumer protection laws such as the FDCPA.  *Id.*  However, these arguments apply with equal

12  force in most circumstances involving an arbitration clause, and the Supreme Court has held that

13  arbitration clauses should be upheld, even in the face of state consumer protection legislation

14  purporting to preclude arbitration in particular types of cases.  *See, e.g. AT&T Mobility*, 131 S. Ct.

15  at 1747.  Tellingly, Krulee cites no case in support of his equity argument.  The court finds no

16  equitable grounds on which reject the arbitration agreement.

17  **IV. ORDER**

18  For the reasons set forth above, the court finds that defendants have shown the existence of

19  an arbitration agreement and that the agreement encompasses the claims asserted by Krulee in this

20  case.  Accordingly, the court GRANTS the motion to compel arbitration.  The court DISMISSES

21  the case as requested by plaintiff if the court granted the motion to compel.

22  **IT IS SO ORDERED**.

23  Dated: June 11, 2015

24

25  Ronald M. Whyte
    United States District Judge

26

27  5:14-cv-02860-RMW
    ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DISMISSING CASE
28

United States District Court
Northern District of California